THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK JONES and MICHAEL MCKEE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

FORD MOTOR COMPANY, a Delaware corporation,

Defendant.

No. 3:21-cv-05666-DGE

**DEFENDANT FORD MOTOR COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

**NOTED FOR CONSIDERATION: January 28, 2022**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1
II. ARGUMENT ......................................................................................................................... 2
    A. Ford Did Not Record or Intercept Text Messages. ......................................................... 2
    B. Plaintiffs Do Not Allege the Requisite Statutory Injuries................................................ 4
    C. Plaintiffs Do Not Adequately Allege Impermissible Recording or Interception ............. 8
        1. Plaintiffs impliedly consented to the recording of their text messages. ...................... 8
        2. Plaintiffs do not allege interception........................................................................... 11

FORD'S REPLY IN SUPPORT OF MOTION TO
DISMISS - i
Case No. 3:21-cv-05666-DGE

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA 98104-7029 | Tel: 206.839.4800

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brinkley v. Monterey Fin. Servs., LLC*,
   340 F. Supp. 3d 1036 (S.D. Cal. 2018)..........................................................................4, 5, 7, 8

*Cal. Pac. Bank v. FDIC*,
   885 F.3d 560 (9th Cir. 2018) ...................................................................................................3

*Cousineau v. Microsoft Corp.*,
   992 F. Supp. 2d 1116 (W.D. Wash. 2012)...............................................................................2

*Dillon v. Seattle Disposition Reps., LLC*,
   179 Wn. App. 41, 316 P.3d 1119 (2014)................................................................................11

*Hayward Prop., LLC v. Commonwealth Land Title Ins. Co.*,
   2018 WL 11365567 (N.D. Cal. Nov. 27, 2018) ......................................................................3

*Indep. Towers of Wash, v. Wash.*,
   350 F.3d 925 (9th Cir. 2003) ...................................................................................................3

*Pulte Home Corp. v. TIG Ins. Co.*,
   794 F. App'x 587 (9th Cir. 2019) ............................................................................................3

*Russo v. Microsoft Corp.*,
   2021 WL 2688850 (N.D. Cal. June 30, 2021) ................................................................4, 6, 8

*State v. Bilgi*,
   496 P.3d 1230 (Wash. Ct. App. 2021)..........................................................................2, 9, 11

*State v. Christensen*,
   153 Wn. 2d 186 (2004) ..........................................................................................................11

*State v. Faford*,
   128 Wn. 2d 476 (1996) ..........................................................................................................11

*State v. Glant*,
   13 Wn. App. 2d 356, 365–66, 465 P.3d 382 (2020)...........................................................9, 11

*State v. Gunwall*,
   106 Wn. 2d 54, 720 P.2d 808 (1986).......................................................................................2

*State v. Kohonen*,
   192 Wn. App. 567 (2016) ........................................................................................................6

FORD'S REPLY IN SUPPORT OF MOTION TO
DISMISS - ii
Case No. 3:21-cv-05666-DGE

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

*State v. Racus*,
    7 Wn. App. 2d 287, 300 (2019) ..............................................................................................10

*State v. Roden*,
    169 Wn. App. 59 (2012) ...................................................................................................11, 12

*State v. Townsend*,
    147 Wn. 2d 666, 57 P.3d 255 (2002)..........................................................................9, 10, 11

*Streamline Bus Grp., LLC v. Vidible, Inc.*,
    No. CV-14-1433, 2016 WL 3523033 (E.D. Pa. June 27, 2016)..........................................4, 8

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021).............................................................................................................5

**Statutes**

Copyright Act...................................................................................................................................6

Federal Fair Credit Reporting Act ..................................................................................................5

RCW 9.61.260's...............................................................................................................................6

RCW 9.73.030 .............................................................................................................................2, 3

RCW 9.73.030(1)(a) .......................................................................................................................2

RCW 9.73.060 ........................................................................................................................ *passim*

RCW 9.73.060's...............................................................................................................................8

RCW 9.73.260(1)(d) .......................................................................................................................2

RCW 9.73.303(1).............................................................................................................................2

**Other Authorities**

Ford, *2021 Explorer Owner's Manual* 18 (2021),
    https://www.fordservicecontent.com/Ford_Content/Catalog/owner_informatio
    n/2021-Ford-Explorer-Gas-HEV-Owners-Manual-version-2_om_EN-
    US_01_2021.pdf (last visited Jan. 27, 2022).........................................................................10

FORD'S REPLY IN SUPPORT OF MOTION TO
DISMISS - iii
Case No. 3:21-cv-05666-DGE

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

## I.     INTRODUCTION

Plaintiffs' Washington Privacy Act ("WPA") claim, alleging Ford vehicles—not Ford—recorded and intercepted text messages, cannot proceed.  Even accepting all of Plaintiffs' allegations as true, Plaintiffs do not allege Ford took part in any recording or obtained any of the information Plaintiffs allege was captured by Ford vehicles.  Plaintiffs, at most, have alleged devices, after they are sold and under Plaintiffs' control, may record or intercept communications.  In their Opposition, Plaintiffs do nothing to explain how their Complaint overcomes this fundamental flaw, resorting instead to the absurd, and baseless, argument that Ford somehow waived its position on this point by not citing legal authorities in its opening motion.  Plaintiffs' Complaint should be dismissed with prejudice given this incurable legal deficiency, which cannot be overcome through amendment.

Even if this core failing did not exist, Plaintiffs' Complaint remains legally infirm for two independent reasons:

First, Plaintiffs have not adequately alleged that they suffered any of the specific injuries the WPA requires to maintain a cause of action—*i.e.*, personal injury, injury to reputation, or injury to business.  Knowing they have not sufficiently alleged such injuries, and that courts dismiss WPA claims on this basis, Plaintiffs turn to misleading arguments.  Plaintiffs attempt to apply the lower Article III injury-in-fact standard to argue their WPA claim can proceed, but the two concepts are not related.  The WPA's injury requirement is a different, higher standard that Plaintiffs must satisfy.  They cannot, requiring dismissal.

Second, Plaintiffs do not allege any actionable recording or interception.  As numerous Washington courts have held, Plaintiffs impliedly consented to the recording of their text messages by sending written electronic communications that they necessarily understood would be preserved.  Nor do Plaintiffs' pleaded facts adequately allege any "interception" as Washington

courts have defined and applied that term.  In response, Plaintiffs again resort to misconstruing applicable law.  Dismissal is required for this independent reason.[1]

## II.     ARGUMENT

### A.     Ford Did Not Record or Intercept Text Messages.

The WPA makes it unlawful for "any *individual, partnership, corporation, association, or the State of Washington . . . to intercept or record*" communications such as text messages. RCW 9.73.303(1) (emphasis added); *see also State v. Bilgi*, 496 P.3d 1230, 1237 (Wash. Ct. App. 2021) (rejecting argument that computer program "independently intercepted" communications because the program "is incapable of intercepting a communication in violation of the [WPA] . . . [The program] is a computer software, not an actor with agency."). As detailed in Ford's Motion, Mot. at 7:6–8:18, Plaintiffs do not allege Ford did any intercepting or recording, only that products Ford manufactured were capable of intercepting or recording messages.  And, Plaintiffs do not allege that Ford in any way received the communications that vehicles allegedly captured. Plaintiffs allegations, accepted as true, fall outside the WPA, which contains no restrictions on the manufacturing of devices.

Plaintiffs' Opposition does not even offer a *theory* to support their argument that Ford, as opposed to the vehicles it manufactured, recorded or intercepted text messages.  Rather, Plaintiffs offer only brief, misguided arguments that ignore Ford's Motion.  Plaintiffs' principal contention is that Ford somehow "waived" this argument because it supposedly has not offered any authority

---

[1] Plaintiffs are incorrect that "call logs" are within the ambit of the WPA.  RCW 9.73.030 prohibits entities from recording or intercepting any "[p]rivate communication . . . between *two or more individuals*[.]"  (Emphasis added); *see also Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012) ("Without an individual on the other end of [the] communication . . . transmission of [plaintiff's] data cannot be considered a communication under the WPA.").  Plaintiffs allege the transmission of data *(e.g.*, call logs), not a communication.  Plaintiffs cite *State v. Gunwall*, 106 Wn. 2d 54, 69, 720 P.2d 808 (1986) but *Gunwall* dealt with "pen registers," a term expressly defined under the WPA, *see* RCW 9.73.260(1)(d), that is found nowhere in the Complaint.  Regardless, even if "call logs" could be considered "[p]rivate communication[s] … between two or more individuals …," RCW 9.73.030(1)(a), Plaintiffs' call-log assertions fail, *inter alia*, because there are no allegations Ford itself recorded or intercepted any call logs or other communications.

on the issue. Opp. at 17:6–15. This claim is, of course, absurd. Ford cited, and analyzed, the very statute at the heart of this case, RCW 9.73.030. *See* Mot. at 7:12–8:3.[2]

Plaintiffs further raise two additional arguments, which are likewise meritless. First, Plaintiffs assert their allegations are sufficient because "[t]he FAC contains specific, detailed allegations that Ford intentionally designed its infotainment systems to intercept and record texts."[3] Opp. at 17:16–21. But this statement only further emphasizes the central flaw in Plaintiffs' case—*i.e.*, that Plaintiffs, at most, allege the "infotainment systems" themselves, after the vehicles were sold, and without connection to Ford, can record and intercept text messages. The Complaint is devoid of any plausible factual allegation that ***Ford*** itself—not the product that Ford sells—has recorded or intercepted anything. Plaintiffs offer no legal authority suggesting that device manufacturers can be liable for devices that, after sale, record or intercept communications. And, there is no such authority precisely because doing so would effectively make illegal the sale of tape recorders, video recorders, and any equipment capable of recording, merely because these products can store recordings.

Second, Plaintiffs state "[i]t makes no difference that the user's act of connecting starts the process in motion, because the statute explicitly forbids the use of any device 'regardless of how such device is powered or actuated.'" Opp. at 17:25–27. But this statement, regardless of its validity, has nothing to do with Ford's involvement in any recording. Nor does this statement

---

[2] None of Plaintiffs' cited cases, Opp. at 17:6–15, are applicable to the present situation. *See Indep. Towers of Wash, v. Wash.*, 350 F.3d 925, 930 (9th Cir. 2003) (on appeal, declining to "address any statute or regulation not accompanied by legal argument in [the] opening brief"); *Cal. Pac. Bank v. FDIC*, 885 F.3d 560, 570 (9th Cir. 2018) (regarding waiver on appeal, holding argument not waived where the defendant cited to valid legal authority and the record); *Pulte Home Corp. v. TIG Ins. Co.*, 794 F. App'x 587, 589 (9th Cir. 2019) (regarding waiver on appeal, finding an argument lacking any legal authority was forfeited); *Hayward Prop., LLC v. Commonwealth Land Title Ins. Co.*, 2018 WL 11365567, at *7 (N.D. Cal. Nov. 27, 2018) (finding argument lacking where defendant argued collateral estoppel, but did "not address the elements of collateral estoppel or otherwise cite relevant authorities," and instead relied on cases regarding "judicial estoppel, a distinct doctrine").

[3] Contrary to Plaintiffs' statement, the Complaint does not contain such allegations. The paragraphs Plaintiffs cite in support of this allegation, Compl. ¶¶ 35, 43. 45, 53, 81, discuss Berla's statements and lack the facts Plaintiffs allege in their Opposition. *Compare* Opp. at 17:19–20 ("¶53 (alleging that Ford and other OEMs decided to design its infotainment systems to retain and transmit deleted data) …." *with* Compl. ¶ 53 ("These facts include that 'OEMs decide what OS and hardware to use, and implement that setup into all brands. As such, vehicle forensic support is global – the same tool is used regardless of country.'").

refute Ford's explanation that Plaintiffs' allegations, even if accepted as true, establish only that vehicles—not Ford—recorded or intercepted text messages. Whether the vehicle or the user started "the process in motion" has nothing to do with Ford's lack of involvement in the process. Plaintiffs simply assume Ford and its post-sale vehicles are the same. But the WPA regulates conduct, not products, and the Complaint lacks any plausible allegation that ***Ford itself*** engaged in any recording or intercepting within the meaning of the statute. Plaintiffs' WPA claim should be dismissed. The dismissal should be with prejudice.

**B.     Plaintiffs Do Not Allege the Requisite Statutory Injuries.**

The WPA's private right of action is limited to plaintiffs who can establish certain, specified injuries—*i.e.*, injuries to "his or her business, his or her person, or his or her reputation." RCW 9.73.060. Plaintiffs have not adequately alleged injuries falling within these ***limited categories***. *See* Mot. at 8:19–10:20.

When, as here, plaintiffs do not allege they suffered the requisite injuries under the WPA, courts dismiss their claims at the pleading stage. *See Streamline Bus Grp., LLC v. Vidible, Inc.*, No. CV-14-1433, 2016 WL 3523033, at *8 (E.D. Pa. June 27, 2016) ("Streamline must plead an injury to its business, person, or reputation, in addition to a violation of the Privacy Act, in order sufficiently state a civil cause of action for damages thereunder."); *Brinkley v. Monterey Fin. Servs., LLC*, 340 F. Supp. 3d 1036, 1044–45 (S.D. Cal. 2018); *Russo v. Microsoft Corp.*, 2021 WL 2688850, at *3 & n. 3 (N.D. Cal. June 30, 2021). Knowing their allegations of vehicles recording text messages did not cause personal injury, or harm to their business or reputation, Plaintiffs resort to arguments that mislead.

First, Plaintiffs improperly conflate the standards for Article III standing with the WPA's specific statutory requirements for injury. Article III standing is a completely distinct concept from whether a party has plausibly alleged the requisite elements of a statutory cause of action. Plaintiffs, however, incorrectly claim that Ford is challenging Plaintiffs' Article III standing and that if Ford fails to establish damages, remand is appropriate. *See* Opp. at 5:22–27. Ford's position

is clear: The WPA mandates that plaintiffs must establish specific forms of harm to bring a claim—harm to their person, business, or reputation. *See* RCW 9.73.060. Plaintiffs do not adequately allege that they suffered any of these harms, meaning they have failed to state a claim upon which relief can be granted, regardless of whether their case is in federal or state court. Dismissal, not remand, is appropriate.[4]

Plaintiffs double down on their conflation of Article III standing and the specific statutory injuries the WPA requires by stating: "Injuries to the 'person' are also 'injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts . . . reputational harms, disclosure of private information, and ***intrusion upon seclusion*** . . . [and] harms specified by the Constitution itself.'" Opp. at 6:2–6 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)) (emphasis in original).

This argument, and its implication that *TransUnion* defined what constitutes injuries to a "person" under the WPA, is misleading on multiple levels. *TransUnion* was a U.S. Supreme Court case dealing with Article III standing for claims under the Federal Fair Credit Reporting Act. It had nothing to do with the WPA, or its statutory injury requirement. *See TransUnion*, 141 S. Ct. at 2200. Moreover, notwithstanding Plaintiffs' misleading use of quotations, the Supreme Court was not discussing what constitutes injuries to the "person." Opp. at 6:2–6. Rather, the Court was stating that intangible harms can be sufficient to create Article III standing.[5] The Supreme Court's discussion in *TransUnion* is wholly unrelated to the specific forms of injury that the Washington Legislature mandated a plaintiff must establish in order to bring a claim under the WPA. *See Brinkley*, 340 F. Supp. 3d at 1045 n.3 (dismissing WPA claim for failure to allege requisite

---

[4] Ford removed this case to federal court, *see* Dkt. No. 1, and maintains that this Court has jurisdiction over this matter. Likewise, Plaintiffs have not sought to remand this case to state court, nor do they assert in their Opposition that they lack Article III standing. Neither party, accordingly, has questioned Plaintiffs' Article III standing at this time, based on the allegations in the Complaint. If the Court, however, wishes to address this issue, Ford respectfully requests the opportunity to be heard through briefing.

[5] The full quotation, which Plaintiffs fail to provide, states: "Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 141 S. Ct. at 2204.

FORD'S REPLY IN SUPPORT OF MOTION TO DISMISS - 5
Case No. 3:21-cv-05666-DGE

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

damages and rejecting argument that "invasion of privacy inherent in the unauthorized recording of an individual's conversations satisfies the personal injury requirement of [RCW 9.73.060]").

In contrast, at least one court that has actually interpreted what "injury to their person" means under the WPA has stated that it means personal injury. *See Russo*, 2021 WL 2688850, at *3 & n.3 (plaintiffs failed to state WPA claim because "allegations [were] far too sparse and conclusory to make the claim of ***personal injury*** plausible.") (emphasis added); *see also State v. Kohonen*, 192 Wn. App. 567, 577 (2016) (interpreting RCW 9.61.260's phrase "injury on the person" to require "an intent to ***physically*** harm") (emphasis added). Although Ford cited these authorities in its Motion, *see* Mot. at 8 n. 3, Plaintiffs do not even attempt to distinguish or refute them. Instead, they misleadingly invoke Article III's injury-in-fact standard. The Court should not countenance this attempt at deception. Plaintiffs have not adequately pleaded the specific forms of injury that the WPA requires, mandating dismissal.[6]

Second, Plaintiffs argue that allegations of a "personal tort of invasion of privacy" is all that is required to establish personal injury within the meaning of the WPA because "[t]his reading gives full meaning to the entire statute[.]" Opp. at 7:8–10. Plaintiffs' vague reasoning in support of this proposition is incoherent. Plaintiffs start with the unsupported proposition that "RCW 9.73.060 offers relief to a broader class of affected persons than does the common law." Opp. at 7:10–11. Plaintiffs then described how RCW's 9.73.060's use of the phrase "[a]ny person" to describe who may bring suit under the statute means that people besides the sender and recipient of a given communication may be able to establish requisite injuries. (Plaintiffs provide the example of a telegraph company being injured by an employee's misconduct). *See* Opp. at 7:11–16. Based on this assertion, Plaintiffs leap to the conclusion that "[f]or the person whose private text is intercepted or recorded, however, the violation alone causes injury." Opp. at 7:16–17. This

---

[6] Plaintiffs' invocation of the Copyright Act to argue Plaintiffs have Article III standing, *see* Opp. at 8:1–11, fails for the same reasons described above. Article III standing is irrelevant to whether Plaintiffs have adequately alleged one of the specific forms of injury necessary to sustain a WPA claim. Even assuming that Plaintiffs asserted a Copyright Act claim in the Complaint—they did not—whether that claim creates Article III standing does not speak to whether Plaintiffs have alleged a requisite injury under the WPA, and Plaintiffs cite no authority suggesting otherwise.

FORD'S REPLY IN SUPPORT OF MOTION TO DISMISS - 6
Case No. 3:21-cv-05666-DGE

DLA Piper LLP (US)
701 Fifth Avenue, Suite 6900
Seattle, WA  98104-7029 | Tel: 206.839.4800

is a complete non-sequitur.  The mere fact that people (or entities) beyond the sender or recipient may be able to bring some claim under the statute does not have anything to do with the form of harm a plaintiff must establish.

Despite claiming that this contorted reasoning "gives full meaning to the entire statute," Opp. at 7:10–11, Plaintiffs provide no explanation why this would be true.  The fact that third parties may be able to bring claims under RCW 9.73.060 does not mean senders or recipients need only allege some common-law violation of their privacy to state a valid WPA claim.  The two concepts are unrelated.  Indeed, Plaintiffs' argument that any "intrusion upon seclusion" would be sufficient to support a WPA claim would nullify the specific injury requirements the Legislature chose to incorporate into the statute.  *See* RCW 9.73.060.  At least one court has already rejected this precise argument.  *See Brinkley*, 340 F. Supp. 3d at 1045 n.3 (dismissing WPA claim for failure to allege requisite damages and ***rejecting*** argument that "invasion of privacy inherent in the unauthorized recording of an individual's conversations satisfies the personal injury requirement of [RCW 9.73.060]").

Third, Plaintiffs assert they have alleged "personal injury" because they "specifically alleged that due to Ford's conduct they lost the ability to delete texts and to engage in private, un-surveilled conversations." Opp. at 7:22–24.  These allegations, even accepted as true, do not establish personal injury.  There are no allegations of bodily harm.  Moreover, Plaintiffs' subsequent claim that they were "injured" because "Ford has invaded Plaintiffs' common-law and statutory rights, wrongly preventing them from conduct they are entitled to engage in," Opp. at 7:23–25, is of no moment.  Whether Plaintiffs have been "injured" is not the question before the Court.  What matters is whether Plaintiffs have plausibly alleged the specific *types* of injuries that RCW 9.73.060 requires.  They have not.

Fourth, Plaintiffs—disregarding on-point authority—argue that RCW 9.73.060 requires only the conclusory assertion that they were injured in their person, and not plausible allegations or actual facts to support that assertion. *See* Opp. at 8:12–18.  Plaintiffs base their argument on

RCW 9.73.060's use of the word "claiming." *Id.* ("The text of the WPA is clear: 'Any person who . . . violates the provisions of this chapter shall be subject to legal action for damages, to be brought by any other person *claiming* that a violation of this statute has injured his or business, his or her person, or his or her reputation.'") (quoting RCW 9.73.060) (emphasis in original). But Plaintiffs ignore the next sentence in this statute, which confirms that only a person "so injured" is entitled to damages. *See* RCW 9.73.060 ("A person **so injured** shall be entitled to actual damages[.]") (emphasis added). The second sentence requires Plaintiffs to actually establish, rather than merely claim, one of the specified injuries. *See Streamline,* 2016 WL 3523033, at *8 ("That a plaintiff bringing a claim under RCW 9.73.060 requires an injury in addition to a violation of the Act is reinforced by the fact that RCW 9.73.060 conditions the entitlement to damages, actual or liquidated, **on the plaintiff being a 'person so injured**.'") (quoting RCW 9.73.060) (emphasis added). Plaintiffs ignore the full statutory provision and *Streamline*, which Ford cited in its opening Motion.

RCW 9.73.060 requires plaintiffs, at the pleading stage, to plausibly allege injury to their person, business, or reputation. *See Streamline*, 2016 WL 3523033, at *8; *Brinkley*, 340 F. Supp. 3d at 1044–45; *Russo*, 2021 WL 2688850, at * 3 & n. 3. Plaintiffs ignore these on-point authorities that Ford cited in its Motion, Mot. at 7:21–8:5, and argue otherwise. Plaintiffs are wrong on the law. Plaintiffs have not adequately alleged the specific injuries required to bring a WPA claim. Dismissal is required for this independent reason.

**C.    Plaintiffs Do Not Adequately Allege Impermissible Recording or Interception**

    **1.    Plaintiffs impliedly consented to the recording of their text messages.**

Plaintiffs acknowledge, as they must, that Washington courts have repeatedly held that people who communicate electronically in writing—such as through text messages—consent to the recording of those messages under the WPA. *See* Opp. at 15:10–12. Plaintiffs attempt to circumvent these on-point authorities, but each of their arguments is unavailing.

First, Plaintiffs argue that "in every case finding consent to recording, the *sender* consented to the private communication being recorded on the *recipient's* device within the system on which it was sent or received." Opp. at 15:8–10 (emphasis in original). Plaintiffs fail to acknowledge that a person who communicates by email or text message consents to the preservation, and possible further dissemination, of the contents of that message, not just to the recording of the communication on a specific device. In *Townsend*, the Washington Supreme Court held that "[a] person sends an e-mail message with the expectation that it will ***be read and perhaps printed by another person***. To be available for reading or printing, the message first must be recorded on another computer's memory." *State v. Townsend*, 147 Wn. 2d 666, 676, 57 P.3d 255 (2002) (emphasis added); *see also Bilgi*, 496 P.3d at 1236 ("When the sender of a written electronic message impliedly consents to the message's recording, ***they bear the risk that the intended recipient with share the message with others***") (emphasis added); *State v. Glant*, 13 Wn. App. 2d 356, 365–66, 465 P.3d 382 (2020) ("When a person sends e-mail or text messages they do so with the understanding that the messages would be available to the receiving party ***for reading or printing***.") (emphasis added). The defendant in *Townsend* was deemed to have understood that his email would be stored in the computer's memory, read by others, and possibly reproduced by being printed. Put differently, the Washington Supreme Court acknowledged that people understand their written electronic communications will be preserved and possibly reproduced. A contrary rule would ignore the reality of modern communications and create innumerable problems: Under Plaintiffs' reading of the statute, every email server, computer, smartwatch, or other similar device could be deemed to have violated the WPA because emails and text messages are necessarily captured on these devices, even though they are not the actual phone or computer to which a text message or email is sent. Moreover, every screenshot of a text message or email would be considered an impermissible recording because it would be a reproduction of a communication without both parties' consent. The Washington Supreme Court recognized this

reality and held that people understand what happens when they communicate digitally in writing—*i.e.*, that these messages may be preserved on multiple devices and in different forms.

Second, Plaintiffs claim that *Townsend* holds people impliedly consent to the preservation of their electronic communications only when there is some privacy policy present that warns of the preservation of the communications. Opp. at 15:25–16:20.[7] Not so. In *Townsend*, the Court first determined that a person understands that emails will be preserved, regardless of any affirmative statements or privacy policies. *Townsend*, 147 Wn. 2d at 676 ("Like a person who leaves a message on a telephone answering machine, a person who sends an e-mail message anticipates that it will be recorded."). With respect to the unique instant messaging system, ICQ, the Court found the analysis differed because "unlike e-mail, ICQ technology does not require that messages be recorded for later use. Rather, it functions with both communicators on-line at the same time. In other words, each party talks in 'real time' by sending their message on to the computer monitor of the other party who may respond with an answering message." *Id.* at 676–77. Because of this instant messaging format, the Court looked to what the ICQ's privacy policy stated about preservation of messages. *Id.* at 677. Text messages are, of course, different than instant messaging applications, and like email, are stored on devices after they are sent. Indeed, Washington courts have repeatedly held that people impliedly consent to the recording of their text messages—without analyzing the presence of a privacy policy or other similar statements. *State v. Racus*, 7 Wn. App. 2d 287, 300 (2019) (finding implied consent for recording of text messages

---

[7] Plaintiffs chide Ford, stating "Ford does not attempt to demonstrate consent by proffering a privacy policy or terms of service to show any plaintiff consented to its recording and interception." Opp. at 16:16–17. To ensure there is no negative implication by leaving this allegation unanswered—and not for purposes of deciding the present Motion—Ford notes that its owner's manual states the following: "If you connect a cell phone to the system, the system creates a profile that links to that cell phone. The cell phone profile enables more mobile features and efficient operation. **The profile contains, for example data from your phonebook, read and unread text messages and call history, including history of calls when your cell phone was not connected to the system. . . The cell phone profile, media device index, and diagnostic log remain in your vehicle unless you delete them and are generally accessible only in your vehicle when you connect your cell phone or media device**. If you no longer plan to use your system or your vehicle, we recommend that you use the master reset function to erase the stored information. . . **System data cannot be accessed without special equipment and access to your vehicle's module**." Ford, *2021 Explorer Owner's Manual* 18, (2021), https://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2021-Ford-Explorer-Gas-HEV-Owners-Manual-version-2_om_EN-US_01_2021.pdf (last visited Jan. 27, 2022) (emphasis added).

independent of any privacy policy); *State v. Roden*, 169 Wn. App. 59, 67 (2012) (same); *Glant*, 13 Wn. App. 2d at 366 (same).

Third, Plaintiffs' citation to *Dillon v. Seattle Disposition Reps., LLC*, 179 Wn. App. 41, 316 P.3d 1119 (2014), Opp. at 16:21–17:1, does not support their position. *Dillon* dealt solely with whether conversations were "private" under the WPA and did not analyze consent. *Dillion*, 179 Wn. App. at 60 ("Here, only the first element, whether the conversation was private, is at issue."). Moreover, Plaintiffs' assertion, based on *Dillon*, that "[h]ere, too, consent to the known function of a phone recording a text does not create implied consent to a third party making a completely different type of record . . .", Opp. at 16:26–27, ignores *Townsend* and the authorities cited above. *See, e.g.*, *Bilgi*, 496 P.3d at 1236 ("When the sender of a written electronic message impliedly consents to the message's recording, they bear the risk that the intended recipient will share the message with others"). When a person sends a written communication electronically, the person is deemed to understand that it will be preserved in multiple forms.

### 2.   Plaintiffs do not allege interception.

Plaintiffs devote a significant portion of their Opposition to the argument that they have adequately alleged an "interception" under the WPA. Despite spilling much ink on the issue, Plaintiffs fail to explain how Ford, as opposed to vehicles manufactured by Ford, intercepted any communication. *See supra* Section II.A. The Complaint accordingly fails on that ground alone— before any consideration of whether ***vehicles*** "intercept" communications—and the Court need not proceed further. Regardless, the Complaint does not sufficiently allege any interception based on copying of text messages by vehicles. As described in Ford's Motion, the Washington Supreme Court has defined "intercept" as to "stop … before arrival . . . or interrupt the progress or course," *Roden*, 179 Wn. 2d at 904, and has applied the term where (1) a communication is impeded before arriving at its intended recipient, or (2) there is real-time eavesdropping on a conversation. *See, id.*; *State v. Faford*, 128 Wn. 2d 476 (1996) (interception where scanner used to eavesdrop on neighbor's phone calls); *State v. Christensen*, 153 Wn. 2d 186 (2004).

First, Plaintiffs misread *Roden* in an attempt to argue there can be an "interception" of text messages when, as Plaintiffs allege, vehicles "download and store a copy of all text messages on smartphones when connected to infotainment systems …" Compl. ¶ 17. *Roden* involved a police officer reading and responding to text messages before the intended recipient was aware of the messages. *Roden*, 179 Wn. 2d at 897. The Court found the acts constituted an interception because the messages were ***impeded*** before reaching their intended recipient. *Id.* at 904. Plaintiffs argue "[a]s-yet unread texts are exactly like Roden's message to Lee: sent to and recorded on Lee's phone, unread by Lee, diverted by a third party when the phone is connected." Opp. at 11:19–20. Not true. Plaintiffs make no allegation that any vehicles impeded the text messages from reaching their intended recipient. At most, Plaintiffs allege that a copy of their messages was made; there was no diversion of the messages (or interception).

Second, Plaintiffs' Opposition states that "[t]he FAC alleges that texts sent from a phone while it is connected are copied into a vehicle memory instantaneously." Opp. at 11:8–9. Although Washington courts acknowledge there can be "interception" under the WPA when a person listens in on a live call, Plaintiffs ignore the facts alleged in their Complaint. The Complaint states, without factual support, that vehicles "instantaneously" intercept text messages. Compl. ¶ 18. But the Complaint does not allege that vehicles, as opposed to the phones, are independently capable of receiving messages, so the messages must be received by phone first, undermining the conclusory assertion of "instantaneous" copying and highlighting the lack of factual support the Complaint contains of real-time eavesdropping.

Plaintiffs have not adequately alleged that *vehicles* impermissibly recorded or intercepted communications. But that level of inquiry is not necessary. The question before the Court is whether *Ford* recorded or intercepted communications. It did not. Dismissal is required.[8]

---

[8] As detailed in Ford's Motion, Plaintiffs' declaratory and injunctive relief claim is a request for remedies, not an independent cause of action, and necessarily derivative of Plaintiffs' WPA claim. *See* Mot. 14:9–26. Plaintiffs do not dispute this point. Opp. at 18:6–10. Because Plaintiffs' WPA claim must be dismissed, Plaintiff's request for declaratory and injunctive relief must also be dismissed.

| FORD'S REPLY IN SUPPORT OF MOTION TO DISMISS - 12 | DLA Piper LLP (US) |
|---|---|
| Case No. 3:21-cv-05666-DGE | 701 Fifth Avenue, Suite 6900 |
|  | Seattle, WA 98104-7029 \| Tel: 206.839.4800 |

1    Respectfully submitted this 28th day of January, 2021.

DLA PIPER LLP (US)

*s/ Anthony Todaro*
Anthony Todaro, WSBA No. 30391
Jeffrey DeGroot, WSBA No. 46839
701 Fifth Avenue, Suite 6900
Seattle, Washington 98104-7029
Tel:    206.839.4800
Fax:    206.839.4801
E-mail:  anthony.todaro@us.dlapiper.com
E-mail:  jeffrey.degroot@us.dlapiper.com

*Attorneys for Defendant Ford Motor Company.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the parties.

Dated this 28th day of January, 2022.

*s/ Paige Plassmeyer*_____
Paige Plassmeyer, Legal Practice Specialist